## Ben Hoff, Jr., v. Thomas Larimore et al.

1. FRAUDULENT CONVEYANCES—*Title of Purchaser from Fraudulent Grantee with Notice.*—A purchaser from a fraudulent grantee, with notice of the fraud, will take the title subject to all the infirmities with which it is affected in the hands of such fraudulent grantee.

2. SAME—*Title of Creditors with Notice, Who Take to Secure a Debt.*—Creditors who, to secure a debt, take title by purchase, from a fraudulent vendee, with knowledge of his title, take only such title as their vendee had, and other creditors may assail the whole transaction for fraud.

3. DEBTOR AND CREDITOR—*Sale by Grantor to Defeat Claims of Creditors.*—If a grantor sells for the purpose of defeating the claims of his creditors, and the grantee knowingly assists in effectuating such fraudulent intent, he will be regarded as a participator in the fraud.

**Bill in Aid of an Execution.**—Appeal from the Circuit Court of Wayne County; the Hon. EDMUND D. YOUNGBLOOD, Judge presiding. Heard in this court at the August term, 1902. Affirmed. Opinion filed March 2, 1903.

BEN HOFF, JR., *pro se;* WILLIAM A. POTTS, of counsel.

Fraud will not be presumed, but must be proved like any other fact; and it must be proved by clear and convincing evidence, and the burden of proof is upon the party alleging fraud. Union Nat'l Bank v. State Nat'l

Bank, 168 Ill. 256–264; Schroeder v. Walsh, 120 Ill. 403–409; Hatch v. Jordon, 74 Ill. 414–417; Brady v. Cole, 164 Ill. 116–121; Kingman & Co. v. Reinemer, 166 Ill. 208–212; Meachem v. Hahn & Co., 46 Ill. App. 144–149.

In order to impeach a conveyance for fraud both vendor and vendee must be shown to have intended to commit the fraud. Hatch v. Jordon, 74 Ill. 414–417; Union National Bank v. State National Bank, 168 Ill. 256–264; Gridley v. Bingham, 51 Ill. 153; Myers v. Kinzie, 26 Ill. 36.

PRETTYMAN & VELDE and CREIGHTON, KRAMER & KRAMER, attorneys for appellees.

If a creditor purchases property for the purpose of satisfying his own claim, and takes with notice of the fraud, or the fraudulent title of the grantee, or notice of facts sufficient to put a reasonably prudent man on inquiry, his title will not be protected. Hanchett v. Kimbark, 118 Ill. 121; Boies v. Henney, 32 Ill. 130.

Fraud need not be directly proven, but may be inferred from circumstances. Treadwell v. McEwen et al., 123 Ill. 253; Reed v. Noxon, 48 Ill. 323; Colwell v. Brower, 75 Ill. 516; Bryant v. Simoneau, 51 Ill. 324.

The rule in relation to the sale of property by a debtor with intent to hinder, delay or defraud his creditors, is, that notice to the purchaser of the debtor's fraudulent intent is *per se* evidence of *mala fides*, and renders the sale void, without reference to the purchaser's actual intent. Hanchett v. Goetz, 25 Ill. App., 445.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a bill in chancery in aid of an execution, by appellees against appellant, in the Circuit Court of Wayne County. The trial court found that the allegations of the bill were true as stated therein, and rendered a decree granting in part the relief prayed. Appellant assigned error, and appeals the case to this court.

. Some eight or ten years ago, one James W. Larimore became, by purchase, the owner of 160 acres of land in Wayne county, Illinois. Subsequently he became quite

heavily indebted, and among the debts he owed was one of $1,000 to Thomas Larimore. After this indebtedness was contracted, he fraudulently, and for the purpose of hindering and delaying his creditors, conveyed this land, through a third party, to Josephine Larimore, his wife. This conveyance was wholly without consideration, and was conceived and executed in fraud. On the 5th day of February, 1901, Thomas Larimore recovered judgment, in the Circuit Court of Tazewell County, against James W. Larimore on said indebtedness for the sum of $1,062.75, and costs of suit; and on September 21, 1901, execution issued to the sheriff of Wayne county, and certificate of levy was filed in the recorder's office of that county on September 23d, at the hour of 3:15 o'clock P. M.

With full knowledge of the fraudulent character of the conveyances by which the title of the land in question had passed to Josephine Larimore, appellant, on September 20, 1901, procured her and her husband to convey the same to himself, and caused such conveyance to be filed for record at 8 o'clock A. M. the same day of the levy. The consideration for this conveyance was certain indebtedness which James W. and Josephine Larimore owed him, and certain indebtedness of theirs which he assumed to pay, $600 of it being for money loaned after the fraudulent conveyance to Josephine, and applied to the discharge of a mortgage placed upon the land prior to such conveyance. The total amount of this consideration was equal to about sixty per cent of the then market value of the land.

The title of Josephine Larimore was fraudulent and void as to the creditors of James W. Larimore, and appellant had full knowledge of that fact before and at the time he accepted his conveyance from her.

" A purchaser from the fraudulent grantee, with notice of the fraud, will take the title subject to all the infirmities with which it is affected in the hands of such fraudulent grantee." Am. & Eng. Ency. of Law, 1st Ed., Vol 8, p. 758. "Creditors who, to secure a debt, take title by purchase from a fraudulent vendee, with knowledge of his title, take only such title as their vendor had, and other

creditors may assail the whole transaction for fraud." Waggoner v. Cooley, 17 Ill. 239; Jewett & Root v. Cook, 81 Ill. 260.

Counsel for appellant rely upon the rule of law permitting an insolvent debtor to prefer and pay one creditor in full to the exclusion of all others, and insist that this case falls under that rule. They say appellant was a *bona fide* creditor of James W. Larimore, and, notwithstanding his knowledge of Larimore's insolvency, he had the right to secure payment, and that Larimore conveyed this land to him in discharge of such indebtedness.

This position is not sustained by the evidence. The indebtedness to appellant was due from both James W. and Josephine Larimore. As to the indebtedness, appellant testified:

"Mr. Larimore and his wife were owing me considerable, and I wanted to get my money out of it and couldn't in any other way, and took the land."

Further, the land was not conveyed to him by James W., but by Josephine. True, he negotiated with James W. for the conveyance, and James W. joined with his wife in the execution of the deed, but appellant knew at the time of these negotiations that the legal title to the land was in Josephine; that James W. was insolvent, and that Josephine's title was fraudulent and void as to the creditors of James W. He knew, if he obtained a conveyance, it was to be a conveyance from Josephine, and that it would be subject to all the imperfections of her title. Appellant himself testified that he knew the title was in Josephine, and in effect admitted in his testimony that he was cognizant of all the facts concerning the conveyance to her; and James W. testified:

"Mr. Hoff knew that I had to consult my wife before trading the land, so that it was not to be a trade unless she signed the deed."

So, with full knowledge of all the facts, appellant took a conveyance from Josephine, whose title was void as to appellant, in payment of debts due from both James W.

and Josephine; or, if it be true, as claimed, that it was the joint indebtedness of both, the fact would add nothing to the strength of appellant's position. Under such state of case, the title in appellant is as defenseless, when attacked by a judgment creditor of James W., as if it had remained in Josephine.

Appellant's counsel further contend that the consent of James W. to the conveyance by Josephine to appellant purged the title of fraud, and vested it, clean and valid, in appellant. This position, we think, is in direct conflict with the decisions of our Supreme Court, above cited. While the law of this state permits an insolvent debtor to prefer and pay one creditor in full to the exclusion of all others, still, until such preferred creditor is legally secured, or payment to him is actually made, no mere desire, consent or promise on the part of such debtor will avail. As between appellant and James W. and Josephine Larimore, his title in equity, we think, is and ought to be good; but, as between himself and other creditors of James W., his title is not, and, we think, in equity and under the facts of this case, ought not to be any better than it was in Josephine. With full knowledge, he accepted Josephine's title in payment of his demands, and a court of equity ought not, at the expense of other creditors, to give him more.

Independent of the defect in Josephine's title, we think the trial court was warranted in its finding.

The law in this state is:

"If the grantor sells for the purpose of defeating the claims of his creditors, and the grantee knowingly assists in effectuating such fraudulent intent, he will be regarded as a participator in the fraud." Beidler v. Crane, 135 Ill. 92.

Counsel insist that, in any event, appellant should have been subrogated to the rights of certain creditors that were paid with money borrowed from him. We are not advised of any rule or principle of law warranting subrogation under the facts of this case. However, the trial court did in effect subrogate him to the extent of $593.50, being the

balance of the $600 used in paying of prior mortgages, with interest, after deducting rents received by him; *i. e.*, decreed that, after payment of costs, appellant shall first be paid $593.50; then, out of the remainder, appellee's judgment shall be paid; thus, notwithstanding the fraudulent character of his title, making him a preferred creditor to that extent. No cross-errors are assigned, and therefore we do not deem it our duty to discuss this feature of the case further.

We find no reversible error in this record. The decree of the Circuit Court is affirmed.